# J.C. PENNEY CORPORATION, INC. *v.* TOWN OF MANCHESTER
## (SC 18141)

Norcott, Katz, Palmer, Vertefeuille and McLachlan, Js.

Argued March 25—officially released June 2, 2009

*Elliott B. Pollack*, with whom, on the brief, was *Laura A. Bellotti*, for the appellant (plaintiff).

*Geoffrey Naab*, town attorney, with whom was *Brian J. Murphy*, assistant town attorney, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, J.C. Penney Corporation, Inc., appeals[1] from the judgment of the trial court dismissing its tax appeal brought pursuant to General Statutes §§ 12-117a[2] and 12-119.[3] On appeal, the plaintiff claims that the trial court improperly concluded that: (1) the plaintiff did not meet the applicable tax filing requirements, and, therefore, was not aggrieved and could not litigate its overvaluation claim; (2) the plaintiff used an improper valuation standard; and (3) the defendant, the town of Manchester (town), properly used the modified cost approach method of assessment. We disagree with the plaintiff's first claim, and, accordingly, we affirm the judgment.[4]

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom . . . to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . ."

[3] General Statutes § 12-119 provides in relevant part: "When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . ."

[4] Because we ultimately conclude that the plaintiff was not aggrieved, we need not reach the plaintiff's latter two claims with respect to valuation methodologies.

The present case arises out of the plaintiff's 2005 property tax declaration for personal property stored at its 2,000,000 square foot warehouse located at 1339 Tolland Turnpike in the town. The personal property at issue included industrial machinery and equipment, furniture and fixtures, electronic data processing equipment and supplies. General Statutes § 12-40 instructs a town to issue notice "requiring all persons therein liable to pay taxes to bring in a declaration of the taxable personal property belonging to them on the first day of October in that year . . . ." A taxpayer, however, can submit its personal property tax declaration on or before the first day of November without penalty. General Statutes § 12-41 (d). Prior to November 1, 2005, the plaintiff's senior property tax manager, Richard Wright, sent an e-mail to the town's assessor asserting that the plaintiff was having difficulty preparing its 2005 declaration and requesting a thirty day extension. The town's assessor responded that the plaintiff must file a declaration by November 1, 2005, but that the town would grant the plaintiff an extension to file an amended declaration without penalty. Accordingly, the plaintiff filed its declaration of taxable personal property, dated October 27, 2005, with a listed valuation of $17,095,039. On December 5, 2005, the plaintiff filed an amended declaration. That declaration listed the same total valuation as the October declaration, and included the following caveat: "[The plaintiff's] 2005 amended declaration of its personal property at 1339 Tolland Turnpike in [the town] is believed by [the plaintiff] to include many assets which are no longer located in this facility and may have not been located there for several years. They have been included in this declaration in good faith because [the plaintiff] lacks adequate records to be able to eliminate nonexistent assets without conducting a physical inventory. [The plaintiff] expects to conduct such an inventory within the next [sixty to ninety] days.

If this inventory confirms the foregoing, [the plaintiff] reserves the right to appeal to the [town board of assessment appeals (board)] and to pursue all available rights.

"Similarly, [the plaintiff] believes that many assets which are located in this facility are worth far less, if anything at all, than the values which result from the [a]ssessor's depreciation schedules. At this time, however, [the plaintiff] lacks sufficient information to be able to assert lower values but also reserves the right to do so as set forth above after consulting with valuation experts."

The town did not respond to the plaintiff's position statement in its amended declaration. Instead, the town's assessor proceeded to assess the plaintiff's personal property on the basis of its amended declaration.[5] In addition, after a review of prior declarations of the plaintiff, the assessor determined that the plaintiff had

---

[5] The purpose of these valuations is to permit the town to complete its annual grand list. In *Moore* v. *Stamford*, 134 Conn. 65, 67, 54 A.2d 588 (1947), we noted that "[t]he grand list of a town is made up in accordance with the directions contained in [the] General Statutes . . . . When completed, it covers all of the property subject to taxation by the town. A tax is laid 'on such list' sufficient to cover the [town's] expenditures as estimated for the ensuing year." Indeed, our General Statutes place a statutory obligation upon each town to publish its grand list by a date certain. General Statutes § 12-55 (a) provides in relevant part: "On or before the thirty-first day of January of each year . . . the assessors or board of assessors *shall* publish the grand list for their respective towns. . . ." (Emphasis added.) In performing this function, each assessor is required to take an oath prior to the publication of the town's grand list. See General Statutes § 1-25. As noted previously in this opinion, and in order to enable an assessor to comport with the statutory obligation to publish the grand list by January 31, § 12-41 (d) requires that taxpayers submit their personal property tax declarations by November 1 of the previous taxable year in order to avoid a penalty. Although General Statutes § 12-42 permits an assessor discretion to grant an extension of time to file a declaration, that discretion is limited to granting extensions up to forty-five days. Finally, if a taxpayer fails to file a declaration, § 12-42 authorizes the town assessor to fill out a declaration on behalf of the taxpayer utilizing the "best information" the assessor can obtain regarding the taxpayer's property to complete the declaration.

omitted $4,019,747 of personal property from the amended declaration and added that amount to the total valuation. See General Statutes § 12-53. According to the town, therefore, the total value of the plaintiff's personal property as of October 1, 2005, was $21,114,786. Thereafter, the plaintiff challenged the assessor's valuation in an appeal to the board, which denied the plaintiff's request to reduce the valuation of its personal property.

In the meantime, the plaintiff had employed an appraiser, Kenneth P. Katz, to conduct a comprehensive audit of the personal property stored at its warehouse. After completing the inventory, which, according to the plaintiff, required seven weeks, Katz produced two potential valuations based on different methodologies: approximately $10,778,000 for "fair market value in continued use" and approximately $1,219,000 for "fair market value in exchange." Although Katz' report was dated June 30, 2006, the town did not receive a copy of the report until October or November of 2006, nearly one year after the statutory filing deadline of November 1, 2005.

On May 4, 2006, prior to the completion of Katz' report, the plaintiff appealed from the board's decision to the Superior Court pursuant to § 12-117a. In a two count complaint, the plaintiff claimed that the assessor improperly and incorrectly determined the value of its personal property[6] and that the tax imposed on the basis of that improper valuation was manifestly excessive and could not have been arrived at except by disregarding the statutes for determining the valuation of personal

---

[6] Specifically, the plaintiff alleged that the assessor had: (1) overvalued and overassessed the property; (2) failed to make proper deductions for depreciation and obsolescence; (3) disregarded information supplied by the plaintiff in its 2005 personal property declaration and supporting documentation; and (4) included, in error, items not taxable in the jurisdiction as of the date of assessment.

property. On January 30, 2007, the town filed a motion to dismiss the plaintiff's appeal on the grounds that the plaintiff had failed to establish that it was aggrieved by the town's actions because the plaintiff had failed to provide an accurate and complete declaration and to exhaust its administrative remedies. The trial court denied the motion.

The case subsequently was tried to the court. On November 13, 2007, the court dismissed the plaintiff's appeal because the plaintiff had "failed to comply with the tax statutes pertaining to the annual valuation of personal property," and, therefore, the plaintiff "was in no position to contest the valuation placed on its personal property . . . ."[7] On January 2, 2008, the town filed a motion for articulation of the trial court's judgment, seeking a further finding that the plaintiff had failed to demonstrate aggrievement by failing to prove that its property was overassessed. In response to the town's motion, the trial court articulated that, "[b]ecause the plaintiff failed to file a proper and timely declaration . . . the assessor was obligated to act on the best information available to him" and that "[g]iven the court's rejection of [Katz'] late . . . valuation . . . the plaintiff failed to prove that it was an aggrieved party for the purpose of this tax appeal." This appeal followed.

"[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made

[7] In addition, the trial court rejected the plaintiff's claim, brought pursuant to § 12-119, that the assessor's use of the modified cost approach in valuing the plaintiff's property was improper. The trial court stated that "the assessor used the modified cost approach taking into consideration the actual cost of the assets and the depreciation value. This process implicates the cost approach which is universally accepted as a reliable method of valuation. See *Abington, LLC* v. *Avon,* 101 Conn. App. 709, 711–12 n.4, 922 A.2d 1148 (2007)."

findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003).

"Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of [assessment appeals] to the Superior Court, provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . . In a § 12-117a appeal, the trial court performs a two step function. *The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed.* . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property. . . .

"Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of [assessment appeals] to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equita-

ble power to grant such relief as to justice and equity appertains . . . . If a taxpayer is found to be aggrieved by the decision of the board of [assessment appeals], the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." (Emphasis added; internal quotation marks omitted.) *Breezy Knoll Assn., Inc.* v. *Morris,* 286 Conn. 766, 775–76, 946 A.2d 215 (2008).

The critical document in the present case is the plaintiff's amended declaration, filed with the assessor on December 5, 2005. There are, in effect, two ways in which to characterize the plaintiff's amended declaration: (1) as a complete filing of all of its personal property for the given tax year; or (2) as an incomplete filing. In either respect, the plaintiff has failed to meet its initial burden of demonstrating that it has been aggrieved by the actions of the town assessor.

It is well settled that "[i]t is the duty of each taxpayer, as a personal obligation, to file with the assessors a list of his taxable property and *furnish the facts upon which valuations may be based. . . .* If he fails to do so, the assessors are only required to act upon the best information [they] can obtain . . . and the taxpayer cannot justly complain if the assessors, acting in good faith, make an error in judgment in listing and valuing his property." (Emphasis in original; internal quotation marks omitted.) *Xerox Corp.* v. *Board of Tax Review,* 240 Conn. 192, 205, 690 A.2d 389 (1997). The town assessor, utilizing the plaintiff's amended declaration and previous declarations of the plaintiff, determined that the total value of the plaintiff's personal property was $21,114,786. If, as the plaintiff argues, the amended declaration did not contain complete and accurate information, then, as the law clearly directs, it cannot now complain that it was aggrieved by an assessment based on that information, because it was the plaintiff's obliga-

tion to furnish to the assessor a complete declaration. In arguing that the town should have contacted the plaintiff to request further information pursuant to such authority granted under § 12-53, the plaintiff attempts to shift the burden of supplying a complete declaration to the town. As a matter of law and policy, it is not incumbent upon an assessor to utilize that power to make up for a taxpayer's reporting shortfalls in the first instance. See id., 204–205. Such a system would be unworkable.

The plaintiff's completion of Katz' report does not alter our analysis. The valuation at issue in this case was based on the plaintiff's amended declaration. In contrast, Katz' report, which had been compiled on the basis of a postdeclaration physical inventory, is effectively a new declaration. That is, rather than attacking the town's determination of value on the basis of the amended declaration, the plaintiff has attempted to put forth a new declaration, and proceed as if that report is now the relevant starting point. Sections 12-40 and 12-41 (d) do not permit what is, in essence, a "do-over" by the plaintiff. It was, after all, the plaintiff's obligation to provide the assessor, at the statutorily designated time, with a complete and accurate declaration. Having failed to do so in the first instance, we cannot permit the plaintiff to remedy its error on the basis of a report provided to the town nearly one year after the statutory filing date. In short, because the plaintiff had provided only the amended filing by the statutory deadline and the assessor was entitled to rely upon the best information available in valuing the property, the plaintiff, is, in essence, estopped from challenging the assessor's determination. See *IBM Credit Corp.* v. *Board of Tax Review*, 227 Conn. 826, 828–29, 633 A.2d 294 (1993) (taxpayer cannot contest assessor's use of certain depreciation schedule for property valuation

when taxpayer never provided assessor with alternative depreciation schedule when it filed its declaration).

In addition, if the amended declaration is viewed as a complete declaration, the plaintiff has failed to show that its property was overassessed, and, thus, has failed to show that it was aggrieved. Rather than demonstrate how the town assessor's valuation was in error in light of the items contained in the amended declaration, Katz' report bases its valuation on a new set of facts, derived entirely from Katz' postdeclaration physical inventory. In fact, Katz testified that the plaintiff never had provided him with its amended declaration, and therefore, he never analyzed the town's valuation in light of the items contained in that amended declaration. Accordingly, the plaintiff has failed to demonstrate that its personal property was overassessed.

The judgment is affirmed.

In this opinion the other justices concurred.