# RAINBOW HOUSING CORPORATION ET AL. *v.*
# TOWN OF CROMWELL
## (SC 20506)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 12-81 (7) (A)), "the real property of . . . a corporation organized exclusively for . . . charitable purposes . . . and used exclusively for carrying out . . . such purposes" is exempt from taxation.

Pursuant further to statute (§ 12-81 (7) (B)), "housing subsidized, in whole or in part, by federal, state or local government . . . shall not constitute a charitable purpose . . . . '[H]ousing' shall not include real property used for temporary housing . . . the primary use of which property is . . . housing for . . . persons with a mental health disorder . . . ."

The plaintiffs, R Co. and G Co., tax-exempt charitable organizations, appealed to the trial court from the decision of the Board of Assessment Appeals of the defendant town. The board had denied the plaintiffs' appeal from the town assessor's allegedly improper denial of their application for a charitable property tax exemption under § 12-81 (7) (A), in connection with residential property that R Co. owns and leases to G Co. G Co. operates a "supervised apartment program" on the property. Through the program, G Co. provides housing to as many as five men at a time, all of whom are individuals with severe mental illness who are not able to function in a traditional group home setting. G Co. provides the residents with on-site supervision, as well as various psychiatric, rehabilitative, and skill building services. Residents do not stay at the property for a fixed duration but, rather, remain only until their treatment has progressed to a point that they no longer need G Co.'s

502              DECEMBER, 2021      340 Conn. 501

Rainbow Housing Corp. *v.* Cromwell

services. The Department of Mental Health and Addiction Services provides G Co. with approximately 75 percent of its funding for the program. The parties stipulated to the relevant facts and filed separate motions for summary judgment. The town claimed that the assessor properly found that, under § 12-81 (7) (B), the property was not tax-exempt because the housing is subsidized in part by the department and is not temporary insofar as residency is not limited to any finite length of time. The plaintiffs claimed that the property was tax-exempt because they are organized exclusively for charitable purposes, the property is used exclusively for furthering those purposes, the housing provided thereon is not government subsidized housing, and the housing is temporary. The trial court agreed with the plaintiffs that the property qualified for tax exemption under § 12-81 (7) (A). Accordingly, the court granted the plaintiffs' motion for summary judgment and rendered judgment thereon, from which the town appealed. *Held*:

1. The town could not prevail on its claim that the plaintiffs were not aggrieved by the denial of their application for tax-exempt status insofar as the plaintiffs failed to provide the assessor with sufficient information to demonstrate that the property qualified for an exemption under § 12-81 (7) and, therefore, that the trial court lacked subject matter jurisdiction; because the town stipulated in the trial court to certain facts that allowed for a finding of aggrievement, namely, that the plaintiffs had filed with the assessor a complete application that contained all of the information necessary for the assessor to ascertain whether the property qualified for an exemption under § 12-81 (7), the town could not challenge that fact for the first time on appeal.

2. Contrary to the town's claim, the subject property was exempt from taxation because, regardless of whether the plaintiffs provide "housing subsidized, in whole or in part, by federal, state or local government" within the meaning of § 12-81 (7) (B), the housing the plaintiffs provided was temporary, and the property therefore qualified for the exemption on that basis: upon review of the statutory scheme governing charitable property tax exemptions and dictionary definitions of the word "temporary," this court concluded that the term "temporary housing" in § 12-81 (7) (B) was ambiguous insofar as it refers to housing that is impermanent and limited in duration without specifying the length of the durational limitation imposed; moreover, to resolve this ambiguity, this court considered the legislative history pertaining to the charitable tax exemption for real property used for temporary housing, especially legislative hearing testimony from representatives of various charitable organizations, which supported the conclusions that the term "temporary" does not entail a fixed durational limitation but, instead, varies depending on the particular purpose of the charitable organization and the needs of the residents being served, and that housing is "temporary" within the meaning of the statute, so long as the resident's stay is impermanent, transitional, and in furtherance of one of the charitable purposes enumer-

Rainbow Housing Corp. *v.* Cromwell

ated in § 12-81 (7) (B); furthermore, the plaintiffs satisfied their burden of establishing that the housing provided by the program was "temporary" within the meaning of § 12-81 (7) (B), as the evidence demonstrated that a resident's stay was transitional insofar as its length depended entirely on the resident's treatment progress, the plaintiffs both had charitable purposes pertaining to "housing for . . . persons with a mental health disorder," the supervised apartment program operated in furtherance of those purposes, and the town failed to produce any evidence to rebut the evidence demonstrating that the program's housing was temporary.

(*One justice concurring separately*)

Argued December 11, 2020—officially released September 1, 2021*

*Procedural History*

Appeal from the decision of the defendant's Board of Assessment Appeals upholding the denial of the plaintiffs' claim for a certain real property tax exemption, and for other relief, brought to the Superior Court in the judicial district of Middlesex and transferred to the judicial district of New Britain, where the court, *Hon. Arnold W. Aronson*, judge trial referee, who, exercising the powers of the Superior Court, granted the plaintiffs' motion for summary judgment and rendered judgment thereon, from which the defendant appealed. *Affirmed.*

*Proloy K. Das*, with whom were *Kari L. Olson* and, on the brief, *Joseph D. Szerejko* and *Chelsea R. Sousa*, for the appellant (defendant).

*Pascal F. Naples*, with whom, on the brief, were *Timothy S. Hollister* and *Lilia N. Hrekul*, for the appellees (plaintiffs).

*Elliott B. Pollack*, *Michael J. Marafito* and *Johanna S. Katz* filed a brief for Connecticut Community Non-Profit Alliance, Inc., as amicus curiae.

* September 1, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Rainbow Housing Corp. *v.* Cromwell

*Cody N. Guarnieri* filed a brief for MARC Community Resources, Inc., as amicus curiae.

*Lloyd L. Langhammer* filed a brief for the town of Colchester et al. as amici curiae.

*Cody N. Guarnieri* filed a brief for Adelbrook Community Services, Inc., as amicus curiae.

*William Tong*, attorney general, and *Clare E. Kindall*, solicitor general, filed a brief for the state of Connecticut as amicus curiae.

*Kathleen M. Flaherty* filed a brief for Connecticut Legal Rights Project, Inc., et al. as amici curiae.

*Brian C. Courtney* filed a brief for the Corporation for Independent Living as amicus curiae.

*John F. Sullivan*, assistant town attorney, filed a brief for the town of Manchester as amicus curiae.

*Opinion*

ECKER, J. General Statutes § 12-81 (7)[1] generally exempts from taxation real property owned by a tax-

[1] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (7) (A) Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes or for the purpose of preserving open space land, as defined in section 12-107b, for any of the uses specified in said section, that is owned by any such corporation, and the personal property of, or held in trust for, any such corporation, provided (i) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and (ii) in 1965, and quadrennially thereafter, a statement shall be filed on or before the first day of November with the assessor or board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. Such statement shall be filed on a form provided by such assessor or board of assessors. The real property shall be eligible for the exemption regardless of whether it is used by another corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes;

Rainbow Housing Corp. *v.* Cromwell

exempt charitable organization and used exclusively for charitable purposes; see General Statutes § 12-81 (7) (A); but excludes from that exemption "housing subsidized, in whole or in part, by federal, state or local government . . . ." General Statutes § 12-81 (7) (B). The subsidized housing exclusion contains an exception for "temporary housing" used primarily for certain enumerated charitable purposes, including "housing for . . . persons with a mental health disorder . . . ." General Statutes § 12-81 (7) (B) (iii). This appeal requires us to determine whether the trial court correctly determined that property used for a residential mental health treatment program was tax exempt under § 12-81 (7) on the grounds that it does not provide housing subsidized by the government and that any housing provided is temporary. We affirm the judgment of the trial court.

The following facts, as stipulated by the parties, are undisputed. The plaintiffs, Rainbow Housing Corporation (Rainbow Housing) and Gilead Community Services, Inc. (Gilead), are both tax-exempt charitable organizations for federal tax purposes and subsidiaries of Connecticut Institute for the Blind, Inc., doing business as Oak Hill, an entity organized to provide support

"(B) On and after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section. As used in this subdivision, 'housing' shall not include real property used for temporary housing belonging to, or held in trust for, any corporation organized exclusively for charitable purposes and exempt from taxation for federal income tax purposes, the primary use of which property is one or more of the following: (i) An orphanage; (ii) a drug or alcohol treatment or rehabilitation facility; (iii) housing for persons who are homeless, persons with a mental health disorder, persons with intellectual or physical disability or victims of domestic violence; (iv) housing for ex-offenders or for individuals participating in a program sponsored by the state Department of Correction or Judicial Branch; and (v) short-term housing operated by a charitable organization where the average length of stay is less than six months. The operation of such housing, including the receipt of any rental payments, by such charitable organization shall be deemed to be an exclusively charitable purpose . . . ."

to people with disabilities. Rainbow Housing owns a residential property at 461 Main Street in Cromwell known as Valor Home, which it leases to Gilead for the purpose of providing "a broad range of high quality health care and recovery support services to individuals with the goal of supporting the individual's independent living in the community." Gilead pursues this goal at Valor Home through its "[s]upervised [a]partment [program]," which is an "intensive, community-based [program] designed to serve a specific cohort of clients ([eighteen] years of age and older) with severe mental illness, with or without co-occurring disorders, needing a supportive supervised living environment, [who] are not able to function in the milieu of a traditional group home setting."

Valor Home houses up to five men at a time, all of whom pay a monthly rental fee. The Department of Mental Health and Addiction Services (department) helps fund Valor Home's supervised apartment program. Pursuant to Gilead's contract with the department, Valor Home provides, among other services, "psychiatric clinical services" and "community-based skill building instruction and other rehabilitative activities," including, but not limited to, "[t]eaching, coaching and assisting with daily living activities," "[a]ssistance with location and access of safe, affordable housing of [the resident's] choice, [and] providing education and support regarding tenant rights and responsibilities . . . ." Overall, Gilead receives approximately 75 percent of its funding from the department and "relies [on] donations from the public to make up the difference."

Prior to 2017, the defendant, the town of Cromwell, granted Valor Home a property tax exemption under § 12-81 (7). In 2017, the plaintiffs filed a timely and complete quadrennial renewal form, otherwise known as an M-3 application. See General Statutes § 12-81 (7) (A) (ii). In the M-3 application, the plaintiffs represented

Rainbow Housing Corp. *v.* Cromwell

that Valor Home was exempt from taxation on the October 1, 2017 grand list because "[t]he primary use of [the] property is not housing" but, instead, to "[p]rovide support services for . . . clients with mental illness." Shawna Baron, the assessor for the defendant, denied the plaintiffs' application for a property tax exemption.[2]

The plaintiffs timely filed an appeal with the defendant's Board of Assessment Appeals (board) pursuant to General Statutes §§ 12-89 and 12-111 (a). The board denied the plaintiffs' appeal, and the plaintiffs filed the present action in the Superior Court pursuant to General Statutes §§ 12-89, 12-117a and 12-119, claiming that the defendant improperly denied their application for a property tax exemption. Both the plaintiffs and the defendant moved for summary judgment and stipulated to the relevant facts and related exhibits.

The plaintiffs claimed that Valor Home was exempt from taxation under § 12-81 (7) because the plaintiffs are organized exclusively for charitable purposes, Valor Home is used exclusively for the plaintiffs' charitable purpose of serving individuals with severe mental illness, Valor Home does not provide government subsidized housing or low and moderate income housing, and the housing provided is temporary, transitional, and impermanent. In support of their motion for summary judgment, the plaintiffs submitted the affidavit of Dan Osborne, the chief executive officer of Gilead, who averred that "[o]ccupancy at [Valor Home] is temporary and transitional insofar as the individuals who live at [Valor Home] . . . live there [only] until they no longer need the services provided by Gilead. There is no specific term by which an individual must leave [Valor Home]; the term is entirely dependent [on] the individual's treatment progress. Once the individuals are capa-

_____

[2] Rainbow Housing paid more than $3100 in property taxes under protest in July of 2018, pending the outcome of its appeal from the assessor's denial.

Rainbow Housing Corp. *v.* Cromwell

ble of living more independently through the services and supports [provided] by Gilead, they move out of [Valor Home].''

In its motion for summary judgment, the defendant argued that Valor Home was not tax-exempt under § 12-81 (7) because it provides housing that is subsidized in part by the department and because the housing is not limited to a finite length of time and, therefore, is not temporary. In support, the defendant relied on the stipulated fact that Valor Home is funded by the department and an affidavit from Baron explaining that she had ''determined that [Valor Home] does not qualify for a charitable tax exemption pursuant to . . . § 12-81 (7) because [the] plaintiff[s] failed to establish that [Valor Home] is used for eligible temporary housing.''

The trial court held a hearing on the motions for summary judgment, at which counsel for both parties assured the court that there were no disputed factual issues and that the sole question was whether Valor Home was exempt from taxation under § 12-81 (7) as a matter of law. Following the hearing, the court granted the plaintiffs' motion for summary judgment and denied the defendant's motion. This appeal followed.[3]

On appeal, the defendant renews the claims raised below, namely, that Valor Home is not tax-exempt under § 12-81 (7) because it provides subsidized housing that is not limited to a finite length of time and, thus, is not temporary. After amici curiae filed their briefs,[4] the

---

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] On October 28, 2020, we invited amici curiae to file briefs that address the following question: ''Did the trial court [correctly] conclude that the plaintiffs, [which] operate a supervised apartment program that includes services rendered by contract with the [department] for men who suffer from severe mental illness, were entitled to a municipal property tax exemption under . . . § 12-81 (7) because the subject property was not 'housing subsidized, in whole or in part, by . . . state . . . government' and qualified as 'temporary housing' under the statute?'' In response, the following entities

340 Conn. 501 DECEMBER, 2021 509

Rainbow Housing Corp. *v.* Cromwell

defendant filed a supplemental brief in which it adopted a new claim, raised for the first time by the amicus curiae town of Manchester. Specifically, the defendant claims that the plaintiffs were not aggrieved by the denial of their M-3 application because they failed to provide the assessor with sufficient information to demonstrate that Valor Home was exempt from taxation under § 12-81 (7).

I

We first address the defendant's claim that the plaintiffs were not aggrieved by the denial of their M-3 application because they failed to provide sufficient information to demonstrate that Valor Home qualified for a property tax exemption under § 12-81 (7). The defendant points out that, "[i]n response to the application questions regarding the average stay of residents at the property, rents, amount of income received from rent, and whether the rent was subsidized by the government, the plaintiffs answered 'N/A,' " and "[n]one of the supporting documentation required in conjunction with the application was supplied . . . ." The defendant contends that, in light of the plaintiffs' failure to provide the assessor with this information, the plaintiffs were not aggrieved by the denial of their application pursuant to our holding in *J.C. Penney Corp.*, *Inc.* v. *Manchester*, 291 Conn. 838, 970 A.2d 704 (2009).[5] We disagree.

filed briefs as amici curiae: Connecticut Community Non-Profit Alliance, Inc., Connecticut Legal Rights Project, Inc., Connecticut Fair Housing Center, Adelbrook Community Services, Inc., MARC Community Resources, Inc., the Corporation for Independent Living, the towns of Colchester and Manchester, and the state of Connecticut.

[5] In *J.C. Penney Corp.*, *Inc.* v. *Manchester*, supra, 291 Conn. 838, we held that, when an appeal under § 12-117a "call[s] in question the valuation placed by assessors [on] . . . property . . . the trial court performs a two step function. The burden, in the first instance, is [on] the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed." (Emphasis omitted; internal quotation marks omitted.) Id., 844. If the taxpayer fails "to file with the assessors a list of his taxable property and furnish the facts upon which valuations may be based," then the taxpayer is not "aggrieved by an assessment based" on the informa-

Rainbow Housing Corp. *v.* Cromwell

Aggrievement is a component of standing, which is essential to invoke the subject matter jurisdiction of the trial court. See, e.g., *Andross* v. *West Hartford*, 285 Conn. 309, 321, 939 A.2d 1146 (2008). Statutory aggrievement under §§ 12-89, 12-117a and 12-119 "exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) Id., 322. Although the defendant failed to preserve its aggrievement claim in the trial court, we will review it because it implicates the trial court's subject matter jurisdiction. See *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 506, 43 A.3d 69 (2012).

Contrary to its claim on appeal, the defendant stipulated below that the plaintiffs filed a "timely" and "complete M-3 application" and that "Rainbow [Housing] is aggrieved by the decision of the assessor to deny their request for a tax exemption of the subject property and by the decision of the board affirming the denial of the tax exemption." The parties cannot confer subject matter jurisdiction by agreement, and, therefore, the conclusory portion of the stipulation stating that the plaintiffs are "aggrieved" is of no consequence to the

tion available to the assessors. (Emphasis omitted; internal quotation marks omitted.) Id., 845. "Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of [assessment appeals] to alter the assessment was improper . . . may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains . . . ." (Internal quotation marks omitted.) Id., 844–45.

The plaintiffs in the present case do not call into question the valuation of their property; instead, they claim that Valor Home is completely exempt from taxation and seek relief under §§ 12-89 and 12-119, in addition to § 12-117a. We need not decide whether our holding in *J.C. Penney Corp., Inc.*, applies outside of the valuation context because we resolve the aggrievement issue on other grounds.

Rainbow Housing Corp. *v.* Cromwell

present appeal, but the "parties can stipulate to facts to allow [the] finding of aggrievement . . . ." *Fox* v. *Zoning Board of Appeals*, 84 Conn. App. 628, 637, 854 A.2d 806 (2004); see also *Jones* v. *Redding*, 296 Conn. 352, 364, 995 A.2d 51 (2010) (parties stipulated to facts on which "the legal conclusion of aggrievement" was based). That is what occurred here when the parties stipulated to the fact that the plaintiffs' M-3 application was "complete," meaning that it contained all of the information necessary for the assessor to ascertain whether Valor Home was entitled to a property tax exemption under § 12-81 (7). Having so stipulated, the defendant cannot now challenge that fact for the first time on appeal. We therefore reject the defendant's claim that the trial court lacked subject matter jurisdiction.

II

On the merits, the defendant contends that the trial court improperly rendered summary judgment in favor of the plaintiffs because Valor Home provides government subsidized housing that is not temporary in nature and, thus, does not qualify for tax-exempt status under § 12-81 (7). We need not decide whether Valor Home provides "housing subsidized, in whole or in part, by federal, state or local government" within the meaning of § 12-81 (7) (B) because we conclude that Valor Home's housing is "temporary" and therefore qualifies for the exemption on that basis.

The scope of the charitable exemption in § 12-81 (7) is a question of statutory construction, over which we exercise plenary review. See, e.g., *Tannone* v. *Amica Mutual Ins. Co.*, 329 Conn. 665, 671, 189 A.3d 99 (2018). In addition to the usual rules of statutory construction that apply generally; see General Statutes § 1-2z; our analysis of § 12-81 (7) also is governed by the rule of strict construction applicable to statutory provisions

Rainbow Housing Corp. *v.* Cromwell

granting tax exemptions. See *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 707, 966 A.2d 188 (2009). "It is . . . well established that in taxation cases . . . provisions granting a tax exemption are to be construed strictly against the party claiming the exemption, who bears the burden of proving entitlement to it. . . . Exemptions, no matter how meritorious, are of grace . . . . [Therefore] [t]hey embrace only what is strictly within their terms. . . . We strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . [I]t is also true, however, that such strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used."[6] (Citations omitted; internal quotation marks

_____

[6] As we observed in *St. Joseph's Living Center, Inc.* v. *Windham*, supra, 290 Conn. 695, the rule of strict construction of tax exemption statutes has not always been applied in cases involving "educational, scientific or charitable organizations." Id., 708 n.22. To the contrary, the property of such organizations historically "was treated rather uniformly as being subject to 'a rule of nontaxability.' " Id., quoting *Arnold College for Hygiene & Physical Education* v. *Milford*, 144 Conn. 206, 210, 128 A.2d 537 (1957). The reasoning of this line of cases relied on the "view that such exemptions were 'not merely an act of grace on the part of the [s]tate . . . [but stood] squarely on [s]tate interest. To subject all such property to taxation would tend rather to diminish than increase the amount of taxable property. Other conditions being equal, the happiness, prosperity and wealth of a community may well be measured by the amount of property wisely devoted to the common good . . . .' *Yale University* v. *New Haven*, 71 Conn. 316, 332, 42 A. 87 (1899). Our approach to such statutes reflected this understanding: 'Consequently, [General Statutes (1949 Rev.) § 1761 (7), a functionally identical predecessor of § 12-81 (7)] does not come within the rule that tax exemption statutes must be construed strictly against the taxpayer.' *Arnold College for Hygiene & Physical Education* v. *Milford*, supra, 210; see also *Loomis Institute* v. *Windsor*, 234 Conn. 169, 176, 661 A.2d 1001 (1995) (articulating and following more liberal rule of construction applied to educational institutions)." *St. Joseph's Living Center, Inc.* v. *Windham*, supra, 708 n.22. It is unclear "precisely why this approach has seemingly become extinct, nor is it particularly clear whether it is applicable beyond the educational context."

omitted.) Id. Despite this rule of construction, we define
"a charitable use or purpose . . . rather broad[ly] and
liberal[ly]." Id., 715. The definition of a charitable use
or purpose is not "restricted to mere relief of the desti-
tute or the giving of alms but comprehends activities,
not in themselves self-supporting, which are intended
to improve the physical, mental and moral condition
of the recipients and make it less likely that they will
become burdens on society and more likely that they
will become useful citizens." (Internal quotation marks
omitted.) Id., 715–16. Thus, "[c]harity embraces any-
thing that tends to promote the well-doing and the well-
being of social man." (Internal quotation marks omit-
ted.) Id., 716.

We begin our analysis with the statutory scheme gov-
erning charitable property tax exemptions. Section 12-
81 (7) (A) provides that property used for "scientific,
educational, literary, historical or charitable purposes"
is "exempt from taxation." Subdivision (B) of § 12-81 (7)
creates an exclusion to this tax exemption for "housing
subsidized, in whole or in part, by federal, state or local
government and housing for persons or families of low
and moderate income [which] shall not constitute a
charitable purpose under this section." The same provi-
sion carves out an exception to this exclusion for five
specified categories of temporary housing. Specifically,
subdivision (B) provides that, "[a]s used in this subdivi-
sion, 'housing' shall not include real property used for
temporary housing belonging to, or held in trust for,
any corporation organized exclusively for charitable
purposes and exempt from taxation for federal income
tax purposes, the primary use of which property is one
or more of the following: (i) An orphanage; (ii) a drug

Id. Because the parties have not asked us to clarify the rule of construction
applicable to § 12-81 (7), we do not resolve the conflict between the modern
trend of strict construction and the historical trend of liberal construction
in this regard.

514 DECEMBER, 2021 340 Conn. 501

Rainbow Housing Corp. *v.* Cromwell

or alcohol treatment or rehabilitation facility; (iii) housing for persons who are homeless, persons with a mental health disorder, persons with intellectual or physical disability or victims of domestic violence; (iv) housing for ex-offenders or for individuals participating in a program sponsored by the state Department of Correction or Judicial Branch; and (v) short-term housing operated by a charitable organization where the average length of stay is less than six months. The operation of such housing, including the receipt of any rental payments, by such charitable organization shall be deemed to be an exclusively charitable purpose . . . .'' General Statutes § 12-81 (7) (B). Thus, subsidized housing or low and moderate income housing falls within the scope of the charitable exemption only if it is "temporary" and primarily used for one of the five enumerated charitable purposes.

It is undisputed that Valor Home provides treatment and services for "persons with a mental health disorder . . . ." General Statutes § 12-81 (7) (B) (iii). The parties dispute whether Valor Home provides "housing subsidized, in whole or in part, by . . . state . . . government" and, if so, whether the housing is "temporary" within the meaning of § 12-81 (7) (B) (iii). For purposes of this appeal, we will assume, without deciding, that Valor Home provides housing subsidized in part by the department. We nonetheless conclude that the housing is "temporary" and, therefore, exempt from taxation under § 12-81 (7) (B) (iii).

The word "temporary" is not defined in the statutory scheme, so we look to the "commonly approved usage of the language . . . ." General Statutes § 1-1 (a). The word "temporary" means "lasting for a time only: existing or continuing for a limited time: impermanent, transitory . . . ." Webster's Third New International Dictionary (2002) p. 2353; see also Oxford American Dictionary and Language Guide (1999) p. 1038 (defining

Rainbow Housing Corp. *v.* Cromwell

"temporary" as "lasting or meant to last only for a limited time"). Subsidized housing is "temporary" if it is limited in duration, impermanent, or transitory.

We conclude that the term "temporary housing" in § 12-81 (7) (B) is ambiguous because it refers to housing that is "limited in duration" and "impermanent" but does not specify the *length* of the durational limitation imposed. Indeed, only one of the five exceptions in § 12-81 (7) (B) contains an explicit durational limitation, namely, the fifth, catchall provision for "short-term housing operated by a charitable organization where the average length of stay is less than six months." General Statutes § 12-81 (7) (B) (v). There is no defined time limitation for temporary subsidized housing provided (1) by orphanages, (2) by drug or alcohol treatment or rehabilitation facilities, (3) for the homeless, mentally ill, disabled, or victims of domestic violence, and (4) by programs for ex-offenders. The use of a finite durational limitation for "short-term housing," but the omission of such a limitation for "temporary housing," indicates that the legislature intended the terms "short-term" and "temporary" to have different meanings.[7] See,

_____

[7] The defendant contends that the term "temporary" is "appropriately confined to a specified, limited period of time" and relies on certain statutes that variously define the term as ranging in duration from seventy-two hours to three years. See, e.g., General Statutes § 5-196 (25) (defining "temporary position" in State Personnel Act, General Statutes § 5-193 et seq., as "a position in the state service which is expected to require the services of an incumbent for a period not in excess of six months"); General Statutes § 8-68i (defining "temporary" for purposes of "emergency housing on a temporary basis" as "the period of time needed to find housing, not exceeding thirty days"); General Statutes § 20-126c (a) (6) (defining "temporary dental clinic" as "a dental clinic that provides dental care services at no cost to uninsured or underinsured persons and operates for not more than seventy-two consecutive hours"); see also 8 C.F.R. § 2.142 (F) (2) (ii) (B) (2020) (defining "temporary services or labor" as "limited to one year or less, but in the case of a one-time event could last up to 3 years"). The wide disparity in the various time periods identified in these statutes reinforces our conclusion that the term "temporary" is ambiguous with respect to the length of the durational limitation imposed.

Rainbow Housing Corp. *v.* Cromwell

e.g., *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 177, 9 A.3d 326 (2010) ("[t]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" (internal quotation marks omitted)). Because the term "temporary," as used in the statute, imposes no fixed durational limitation, its meaning in this context is not plain and unambiguous. We therefore turn to extratextual sources of legislative intent.

The legislature adopted the charitable tax exemption pertaining to "real property used for temporary housing" in 2003. See Public Acts 2003, No. 03-270, § 1 (P.A. 03-270). As explained by Senator Eileen M. Daily, the purpose of P.A. 03-270, § 1, was "to help clarify two conflicting court decisions in terms of property taxes for housing for orphanages, drug or alcohol treatment or rehab, homeless [intellectually challenged] or mentally ill individuals, people participating in correction or [J]udicial [B]ranch recovery programs, and charitable organizations where the length of stay is less than six months."[8] 46 S. Proc., Pt. 13, 2003 Sess., p. 4069. Thus, P.A. 03-270 was intended to clarify that charitable "properties [that] are utilized for transitional housing purposes shall be deemed [nontaxable]." 46 H.R. Proc., Pt. 21, 2003 Sess., pp. 7002–7003, remarks of Representative Andrea L. Stillman.

[8] It is not clear which two conflicting cases Senator Daily had in mind, but the chronology suggests that they are *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213, 811 A.2d 1277 (2002), overruled by *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 707, 966 A.2d 188 (2009), and *Isaiah 61:1, Inc.* v. *Bridgeport*, 270 Conn. 69, 851 A.2d 277 (2004), the latter of which was pending on appeal in this court at the time of Senator Daily's statements. In neither of these cases did we address the meaning of the term temporary housing in subdivision (B) of § 12-81 (7), and, therefore, our holdings in these cases are not pertinent to the issue on appeal.

Rainbow Housing Corp. *v.* Cromwell

During the legislative hearings on P.A. 03-270, the legislature heard testimony from representatives of various charitable organizations regarding the deleterious effects that property taxation has had, or would have, on "transitional shelters and treatment programs" that receive federal, state, or local funding. Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 1, 2003 Sess., p. 22. The testimony during these hearings emphasized the transitional and impermanent nature of the housing provided by charitable organizations, as well as the fact that housing was secondary or integral to the charitable purpose. For example, Margaret J. Slez, the attorney for Isaiah 61:1, Inc., a federally and state funded nonprofit community justice agency, testified: "[W]e are in no way an established abode under any definition under the [G]eneral [S]tatutes. We are in fact—our clients are there for a period of time that runs from maybe three to six months, maybe [one] year." Id., p. 24. Attorney Slez urged the legislature to exempt from taxation "transition[al] housing" and "rehabilitative housing . . . ." Id., p. 25.

Similarly Reverend Richard Schuster, executive director of St. Luke's Community Services, Inc., a nonprofit organization that provides shelter for the homeless and persons with acquired immune deficiency syndrome and psychiatric disabilities, testified that his charitable organization provides more than "just . . . a bed and a meal." Id., p. 41. Rather, St. Luke's Community Services, Inc., provides a range of treatment and rehabilitative services to help its clients "reach their full potential. Get back on their feet, get back out in society." Id. The provision of housing and services is "purposely designed to meet the needs of these populations in a way that is both healthier and more productive for the client and at a cost savings to both the state and local government." Id., p. 40, remarks of Reverend Shuster.

Rainbow Housing Corp. *v.* Cromwell

The testimony at the legislative hearing revealed that the average length of a resident's temporary stay varied depending on the charitable organization's purpose, the nature of the services provided, the treatment and/or rehabilitative goals, and the resident's progress toward those goals. For example, the Bridgeport Rescue Mission, a nonprofit organization that provides faith based addiction services, operates a residential program that lasts for twelve months. Id., p. 120. At Operation HOPE, Inc., a nonprofit center for the homeless, the average length of residency is one to three years, depending on the ability of the individual resident to live independently. Id., pp. 93, 96. Despite the disparity between these lengths of time, the legislative record reflects an intent to include them within the meaning of the term "temporary," provided that the resident's occupancy falls within the scope of the charitable purpose of the organization. See id., p. 74, remarks of Senator John McKinney ("I define permanent housing as 'housing.' I don't define staying in a drug or rehabilitation center for [sixty] days as 'housing.' ").

In light of the objectives animating P.A. 03-270 and the foregoing legislative history, we conclude that the term "temporary" does not have an inflexible or fixed durational limitation; instead, the durational limitation will vary depending on the particular purpose of the charitable organization and the needs of the residents who fall within the categories enumerated in § 12-81 (7) (B).[9] So long as a resident's stay is impermanent, transitional, and in furtherance of one of the enumerated categories of charitable purposes, it is "temporary" within the meaning of § 12-81 (7) (B). For example, an orphanage with the charitable purpose of serving the

_____

[9] An organization's charitable purpose often can be ascertained "by examining [its] foundational documents," such as its charter, certificate of incorporation or bylaws. *St. Joseph's Living Center, Inc.* v. *Windham*, supra, 290 Conn. 714.

Rainbow Housing Corp. *v.* Cromwell

needs of minor children without parental guardians may house children for days, weeks, months, or many years. Nonetheless, if a child's stay is impermanent and transitional (i.e., intended to transition the child to a more stable or permanent living environment, such as foster care or adoption), and in furtherance of the orphanage's charitable purpose, the housing is "temporary" under § 12-81 (7) (B). Once the child attains the age of majority and the charitable purpose of the orphanage no longer is being served, then the durational limitation has been reached, and any further stay cannot be considered "temporary" under the statute. The same principle applies to the other specific categories of housing enumerated in § 12-81 (7) (B) (i) through (v).

The defendant contends that a specific, defined time limitation must be read into the statute by judicial construction in order to avoid absurd and unworkable results.[10] We disagree. As discussed previously, the durational limits attaching to the term "temporary" may vary depending on the purpose of the charitable organization and the needs of the residents being served, and our construction of the statute is consistent with the intent of the legislature to exempt from taxation real property used exclusively for the charitable purposes

---

[10] The defendant also relies on subsequent legislative history, arguing that failed legislative attempts to remove the word "temporary" from subdivision (B) of § 12-81 (7) demonstrate "that, if the legislature had intended for the statute to provide an exemption for housing subsidized by state government that was not clearly temporary, it knew how to do it." See Substitute Senate Bill No. 928, 2019 Sess.; Senate Bill No. 419, 2016 Sess. We are "reluctant to draw inferences regarding legislative intent from the failure of a legislative committee to report a bill to the floor, because in most cases the reasons for that lack of action remain unexpressed and thus obscured in the mist of committee inactivity." *In re Valerie D.*, 223 Conn. 492, 518 n.19, 613 A.2d 748 (1992); see also *Schneidewind* v. *ANR Pipeline, Co.*, 485 U.S. 293, 306, 108 S. Ct. 1145, 99 L. Ed. 2d 316 (1988) ("[t]his [c]ourt generally is reluctant to draw inferences from Congress' failure to act"). Regardless, the failed legislative attempts to delete the term "temporary" from subdivision (B) of § 12-81 (7) do not help to illuminate the term's meaning.

Rainbow Housing Corp. *v.* Cromwell

enumerated in § 12-81 (7) (B) (i) through (v). We see
nothing absurd or unworkable resulting from this con-
clusion.[11] See, e.g., *Tayco Corp.* v. *Planning & Zoning
Commission*, 294 Conn. 673, 686, 986 A.2d 290 (2010)
("[W]e construe a statute in a manner that will not
thwart its intended purpose or lead to absurd results.
. . . We must avoid a construction that fails to attain
a rational and sensible result that bears directly on the
purpose the legislature sought to achieve." (Internal
quotation marks omitted.)). Furthermore, "[w]e are not
in the business of writing statutes; that is the province
of the legislature. Our role is to interpret statutes as
they are written. . . . [We] cannot, by [judicial] con-
struction, read into statutes provisions [that] are not
clearly stated." (Internal quotation marks omitted.)
*Thomas* v. *Dept. of Developmental Services*, 297 Conn.
391, 412, 999 A.2d 682 (2010); see also *Vaillancourt* v.
*New Britain Machine/Litton*, 224 Conn. 382, 396, 618
A.2d 1340 (1993) ("[w]e are not permitted to supply
statutory language that the legislature may have chosen
to omit"). The term "temporary" does not have a spe-
cific, defined time limitation, and "[t]he task of promul-
gating such a limitation lies with the legislature, not
with the court." *State* v. *Obas*, 320 Conn. 426, 436, 130
A.3d 252 (2016). Accordingly, we decline the defen-
dant's invitation to graft a specific durational limitation
onto the term "temporary" in § 12-81 (7).

With this statutory framework in mind, we address
whether the trial court properly rendered summary
judgment in favor of the plaintiffs. We begin by examin-

---

[11] The defendant argues that municipal assessors will "have no reliable
or practical metric to apply if an applicant [for a charitable exemption] is
not committed to a fixed and limited period of time of residency." We reject
this claim because the charitable purpose of an organization, as reflected
in its foundational documents, will provide municipal assessors with a reli-
able and practical metric by which to determine whether a period of resi-
dency is temporary within the meaning of § 12-81 (7) (B). See footnote 9
of this opinion.

Rainbow Housing Corp. *v.* Cromwell

ing the charitable purpose of the plaintiffs, as reflected in their foundational documents. See footnote 9 of this opinion. According to Rainbow Housing's amended and restated certificate of incorporation, and its amended and restated bylaws, its charitable purpose is ''to identify, prepare and establish residential facilities for persons with mental illness . . . .'' Similarly, among Gilead's charitable purposes is to ''provid[e] a broad range of high quality health care and recovery support services in the home and community to improve mental health and physical well-being, with the goal of supporting the individual's independent living in the community, all without regard to race, color, creed, national and ethnic origin, disability, sexual preference, or socioeconomic status . . . .''

In furtherance of this purpose, the plaintiffs operate the supervised apartment program at Valor Home ''to serve a specific cohort of clients ([eighteen] years of age and older) with severe mental illness, with or without co-occuring disorders, needing a supportive, supervised living environment, [who] are not able to function in the milieu of a traditional group home setting.'' Valor Home ''offers [twenty-four] hour, [seven] days per week, on-site supervision for clients who need intensive supervision and support in order to improve or maintain functioning in the community.'' Valor Home's ''programs effectively blend the provision of [twenty-four] hour staffing with increased privacy and opportunities for education and life skill supports (shopping, money management, cooking, laundry, home cleaning, etc.) with an apartment style arrangement of the facility.'' ''The philosophy of the [s]upervised [a]partment [p]rograms places emphasis on a consumer-driven recovery-oriented treatment approach,'' with the recognition that ''empowerment and the ability to instill a hope of recovery are key treatment concepts, and are essential to [clients'] successful transition into the community.''

Rainbow Housing Corp. *v.* Cromwell

Valor Home's "primary goals are to provide opportunities for community living to individuals who would otherwise require a long-term hospitalization or other more restrictive settings. Other goals include decreasing the number and duration of hospital stays, developing and maintaining satisfying personal relationships, and empowering individuals to take responsibility for managing their own lives to live an optimum life in the community with the least amount of professional support in the least restrictive setting."

As we discussed previously, the plaintiffs submitted the affidavit of Gilead's chief executive officer, Osborne, in support of their motion for summary judgment. Osborne averred that occupancy at Valor Home "is temporary and transitional insofar as the individuals who live at [Valor Home] . . . live there [only] until they no longer need the services provided by Gilead. There is no specific term by which an individual must leave [Valor Home]; the term is entirely dependent [on] the individual's treatment progress. Once the individuals are capable of living more independently through the services and supports [provided] by Gilead, they move out of [Valor Home]."

This evidence was sufficient to meet the plaintiffs' burden of establishing that the housing provided by Valor Home is "temporary" within the meaning of § 12-81 (7) (B) (iii) because it is impermanent, furthers the plaintiffs' charitable purpose of providing treatment to men with severe mental illness, and is designed to "successful[ly] transition [residents] into the community." Once the residents meet the program's goal and are capable of living more independently, "they move out of [Valor Home]." Because the plaintiffs satisfied their burden of production, the defendant was required to "substantiate its adverse claim by showing that there is a genuine issue of material fact *together with the evidence disclosing the existence of such an issue*."

Rainbow Housing Corp. *v.* Cromwell

(Emphasis in original; internal quotation marks omitted.) *Squeo* v. *Norwalk Hospital Assn.*, 316 Conn. 558, 593–94, 113 A.3d 932 (2015); see also *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 320–21, 77 A.3d 726 (2013) ("the rule that the party opposing summary judgment must provide evidentiary support for its opposition applies only when the moving party has first made out a prima facie case for summary judgment"). "It is not enough . . . for the opposing party merely to assert the existence of . . . a disputed issue. . . . Mere assertions of fact, whether contained in a complaint or in a brief, are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . As a general rule, then, [w]hen a motion for summary judgment is filed and supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by . . . [the rules of practice], must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment shall be entered against him." (Citations omitted; internal quotation marks omitted.) *Squeo* v. *Norwalk Hospital Assn.*, supra, 594.

The defendant failed to produce any evidence to contradict or rebut the plaintiffs' evidence demonstrating that the housing provided by Valor Home is temporary.[12]

_____

[12] In its supplemental brief, the defendant claims that the housing provided by Valor Home is not temporary because "[a] review of the state voter records shows that at least two residents at Valor Home have voted from that address for several years dating back to at least 2013." This evidence was not presented to the trial court and cannot be considered for the first time on appeal. See *State* v. *Edwards*, 314 Conn. 465, 478, 102 A.3d 52 (2014) ("we cannot consider evidence not available to the trial court to find adjudicative facts for the first time on appeal"); *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 756, 196 A.3d 328 (2018) (appellate courts "do not consider evidence not presented to the trial court").

The defendant also claims that summary judgment was improper because "[t]he plaintiffs refused to provide the [defendant] with any evidence as to how long residents reside at Valor Home . . . ." Practice Book § 17-47

Rainbow Housing Corp. *v.* Cromwell

In the absence of such evidence, no disputed issues of material fact existed. See, e.g., *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980) ("[G]eneral averments will not suffice to show a triable issue of fact. . . . Indeed, the whole summary judgment procedure would be defeated if, without any showing of evidence, a case could be forced to trial by a mere assertion that an issue exists."). Accordingly, the trial court properly rendered summary judgment in favor of the plaintiffs.

The judgment is affirmed.

In this opinion McDONALD, D'AURIA, MULLINS and KAHN, Js., concurred.

ROBINSON, C. J., concurring in the judgment. I agree with the majority's decision to affirm the judgment of the trial court, which rendered summary judgment in this tax appeal in favor of the plaintiffs, Rainbow Housing Corporation (Rainbow Housing) and Gilead Community Services, Inc. (Gilead), on the ground that they provide temporary housing within the meaning of Gen-

provides that, "[s]hould it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." As we explained in *Dorazio* v. *M. B. Foster Electric Co.*, 157 Conn. 226, 253 A.2d 22 (1968), "[a] party cannot successfully oppose a motion for summary judgment by merely averring that the [opposing party] has exclusive knowledge about certain facts or that affidavits based on personal knowledge are difficult to obtain. Under § 301 [the predecessor to § 17-47], the opposing party must show by affidavit precisely what facts are within the exclusive knowledge of the moving party and what steps he has taken to attempt to acquire these facts." Id., 230; see also *Bank of America*, *N.A.* v. *Briarwood Connecticut*, *LLC*, 135 Conn. App. 670, 676–77, 43 A.3d 215 (2012) (trial court properly rendered summary judgment in favor of plaintiff because defendant's request for continuance was not timely filed and "did not comply with the requirements of Practice Book § 17-47"). The defendant did not seek a continuance or discovery in accordance with the requirements of § 17-47, and, therefore, we reject the defendant's claim.

Rainbow Housing Corp. *v.* Cromwell

eral Statutes § 12-81 (7) (B).[1] I agree with the majority's
ultimate conclusion that Valor Home, which is a resi-
dence for adults with mental illness that Rainbow Hous-
ing owns and leases to Gilead to operate, provides
temporary housing. I write separately, however, because
I respectfully disagree with the majority's analysis inso-
far as it concludes that § 12-81 (7) (B) is ambiguous
under our well established principles of statutory con-
struction.[2] I conclude that the statutory language of
§ 12-81 (7) (B), and particularly the definition of "tempo-
rary," is clear and unambiguous, with whether a facility
meets that definition being a highly fact sensitive ques-
tion for the trier. Because the facts in this tax appeal
were stipulated, meaning that the defendant, the town
of Cromwell, did not establish the existence of a genu-
ine issue of material fact as to the temporary nature of
the housing provided by Valor Home, I join with the
majority in affirming the judgment of the trial court.

[1] General Statutes § 12-81 provides in relevant part: "The following-
described property shall be exempt from taxation . . . (7) (B) On and after
July 1, 1967, housing subsidized, in whole or in part, by federal, state or
local government and housing for persons or families of low and moderate
income shall not constitute a charitable purpose under this section. As
used in this subdivision, 'housing' shall not include real property used for
temporary housing belonging to, or held in trust for, any corporation orga-
nized exclusively for charitable purposes and exempt from taxation for
federal income tax purposes, the primary use of which property is one or
more of the following: (i) An orphanage; (ii) a drug or alcohol treatment or
rehabilitation facility; (iii) housing for persons who are homeless, persons
with a mental health disorder, persons with intellectual or physical disability
or victims of domestic violence; (iv) housing for ex-offenders or for individu-
als participating in a program sponsored by the state Department of Correc-
tion or Judicial Branch; and (v) short-term housing operated by a charitable
organization where the average length of stay is less than six months. The
operation of such housing, including the receipt of any rental payments, by
such charitable organization shall be deemed to be an exclusively charitable
purpose . . . ."

[2] I also note my agreement with part I of the majority opinion, in which
the majority concludes that, because the parties stipulated that the plaintiffs'
M-3 application was "complete," the defendant cannot now challenge that
fact for the first time on appeal.

As noted by the majority, whether Valor Home's housing is "temporary" within the meaning of § 12-81 (7) (B) presents an issue of statutory construction, which is a question of law over which we exercise plenary review. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141, 210 A.3d 1 (2019). It is well settled that we follow the plain meaning rule pursuant to General Statutes § 1-2z in construing statutes "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019); see id., 45–46 (stating plain meaning rule).

We begin with the text of the statute. Section 12-81 (7) (A) provides that, with certain exceptions, property used for "charitable purposes" is exempt from taxation. However, § 12-81 (7) (B) provides in relevant part that "housing subsidized, in whole or in part, by federal, state or local government . . . shall not constitute a charitable purpose under this section. . . ." The statute then provides that the term "housing" does "not include real property used for *temporary housing* belonging to, or held in trust for, any corporation organized exclusively for charitable purposes and exempt from taxation for federal income tax purposes, the primary use of which property is one or more of the following . . . (iii) housing for persons who are homeless, persons with a mental health disorder, persons with intellectual or physical disability or victims of domestic violence . . . and (v) short-term housing operated by a charitable organization where the average length of stay is less than six months. The operation of such housing, including the receipt of any rental payments, by such charitable organization shall be deemed to be an exclusively charitable purpose . . . ." (Emphasis added.) General Statutes § 12-81 (7) (B). Because it is undisputed that Valor Home provides treatment and services for "persons with a mental health disorder," and we

Rainbow Housing Corp. *v.* Cromwell

assume, without deciding, that Valor Home is subsidized in part by the Department of Mental Health and Addiction Services, the sole question before us is whether Valor Home provides "temporary" housing so as to qualify for a property tax exemption under § 12-81 (7) (B).

Under § 1-2z, we first must determine whether § 12-81 (7) (B) is ambiguous. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). In other words, a statute is considered plain and unambiguous when "the meaning . . . is so strongly indicated or suggested by the [statutory] language . . . that . . . it appears to be *the* meaning and appears to preclude any other likely meaning." (Emphasis in original; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 698 n.6, 258 A.3d 1268 (2021). In interpreting statutes, words and phrases are construed according to their "commonly approved usage . . . ." General Statutes § 1-1 (a); see e.g., *State* v. *Panek*, 328 Conn. 219, 227–29, 177 A.3d 1113 (2018). As discussed by the majority, " 'temporary' means 'lasting for a time only: existing or continuing for a limited time: impermanent, transitory . . . .' Webster's Third New International Dictionary (2002) p. 2353; see also Oxford American Dictionary and Language Guide (1999) p. 1038 (defining 'temporary' as 'lasting or meant to last only for a limited time')." Part II of the majority opinion. Neither the parties nor the majority presents an alternative interpretation for the meaning of "temporary" other than its plain meaning. Instead, the majority concludes that, because the statute provides a durational limitation for short-term housing and is silent regarding a durational limitation for temporary housing,

the statute is ambiguous. I respectfully disagree with the majority's conclusion as to the statute's ambiguity.

First, the majority points out that § 12-81 (7) (B), in enumerating the exceptions to the general exclusion of subsidized housing from tax exempt status, provides a time limit only for "short-term housing," which, as defined in the statute, means an average stay of less than six months in duration. See General Statutes § 12-81 (7) (B) (v). The majority suggests that such an inclusion indicates that the legislature intended the phrases "short-term" and "temporary" to have different meanings. I agree that the meaning of "short-term" is distinct from the previously discussed meaning of "temporary" based on the plain wording of the statute. An inclusion of a time limit for "short-term" housing but not for "temporary" housing, however, does not render the word "temporary" ambiguous. Indeed, it demonstrates that, had the legislature intended to provide a durational limitation for "temporary" housing, rather than just "short-term" housing, it could have done so. See, e.g., *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016) (common principle of statutory construction is that, when legislature expresses list of items, exclusion of item is deliberate); *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)). It is clear from the plain text of the statute that "temporary" housing encompasses residential mental health programs, drug rehabilitation programs, and orphanages, in contrast to "short-term" housing, which is specifically limited in duration, and addresses a broad, catchall category of temporary housing.

Second, I disagree with the majority's conclusion that the statute's silence as to a durational time limit for

Rainbow Housing Corp. *v.* Cromwell

"temporary" housing is evidence of its ambiguity. This court has "made clear that [t]he fact that . . . relevant statutory provisions are silent . . . does not mean that they are ambiguous." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 653–54, 969 A.2d 750 (2009); see, e.g., id., 654 (statute's silence about whether it permits in-court testimony by social worker "should not be skewed as to indicate ambiguity" because it is not susceptible to more than one plausible interpretation); *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004) ("[statutory] silence does not . . . necessarily equate to ambiguity"). I recognize that, in limited circumstances, this court has found a statute ambiguous as a result of its silence. However, this case does not present such a circumstance. "[S]ilence may render a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written." *State* v. *Ramos*, 306 Conn. 125, 136, 49 A.3d 197 (2012); see also *Stuart* v. *Stuart*, 297 Conn. 26, 37, 996 A.2d 259 (2010) (silence as to standard of proof rendered statute ambiguous because there was "more than one plausible interpretation of its meaning"). In contrast, § 12-81 (7) (B) is not silent as to its subject and therefore does not fall within this first instance of ambiguity created by silence.

I also acknowledge that "the legislature's silence as to the scope of a term may render the statute ambiguous. See *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 400, 999 A.2d 682 (2010) ([W]e note that the lien provision is silent with respect to its scope. Although [statutory] silence does not . . . necessarily equate to ambiguity . . . we conclude that this silence renders the provision ambiguous with respect to its scope because there is more than one plausible interpretation of its meaning. . . .)." (Internal quotation marks omitted.) *State* v. *Ramos*, supra, 306 Conn. 137. In *Thomas*, the statute was silent as to an employer's rights

Rainbow Housing Corp. *v.* Cromwell

under the lien provision for future workers' compensation claims. See *Thomas* v. *Dept. of Developmental Services*, supra, 396. No such ambiguity exists here. Instead, the silence of § 12-81 (7) (B) as to a specific duration for temporary housing does not render the text of the statute susceptible to more than one plausible reading. See *State* v. *Ramos*, supra, 138–39 (statutory silence as to effect of untimely filed motion did not render statute ambiguous). Rather, the statutory silence simply requires this court to apply the plain and unambiguous meaning of the word "temporary" to the facts of this case in order to determine whether Valor Home provides temporary housing to its residents.

Because the language of § 12-81 (7) (B) is clear and unambiguous, the only remaining question is whether, as a factual matter, Valor Home's residential program provides temporary housing within the common usage of the term.[3] Under the plain meaning of the statute,

___

[3] I note that, prior to the enactment of § 1-2z, this court addressed latent ambiguity arising from the application of an otherwise unambiguous statute by referencing the legislative history of the statutory provision. "When application of the statute to a particular situation reveals a latent ambiguity in seemingly unambiguous language . . . we turn for guidance to the purpose of the statute and its legislative history . . . ." *University of Connecticut* v. *Freedom of Information Commission*, 217 Conn. 322, 328, 585 A.2d 690 (1991); see also *State* v. *Courchesne*, 262 Conn. 537, 564–65, 572, 816 A.2d 562 (2003); *Conway* v. *Wilton*, 238 Conn. 653, 665, 680 A.2d 242 (1996).

However, after the passage of § 1-2z, this court has recognized that such an approach is no longer appropriate. "Prior to the enactment of § 1-2z, this court sometimes turned to the legislative history of a statutory provision that, although clear on its face, contained a latent ambiguity when the statute was applied to the facts of the case . . . ." *State* v. *Ramos*, supra, 306 Conn. 144 n.4 (*Palmer, J.*, concurring); see also *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 391 n.8, 978 A.2d 49 (2009) ("the legislature responded to *Courchesne* by passing § 1-2z . . . and rejected, in toto, this [court's] method of interpretation" (citation omitted)); *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 392 n.8 ("the statutory construction principles set forth in *Courchesne* . . . have been rejected").

As Justice Palmer reiterated in his concurrence in *Ramos*, "we are directed by § 1-2z not to consider extratextual sources in determining the outcome of the present case because [the statute] is not ambiguous on its face with

whether a charitable program provides temporary housing leads to a fact intensive inquiry. I note that the record in this case consists of stipulated facts, under which there is no genuine issue of material fact. Valor Home provides housing for up to five men at a time, each of whom pays a monthly rental fee. Valor Home provides its residents with a myriad of services, including psychiatric clinical services, skill building instruction, and rehabilitative activities. Gilead's chief executive officer, Dan Osborne, states in his affidavit that ''[o]ccupancy at [Valor Home] is temporary and transitional insofar as the individuals who live at [Valor Home] . . . live there [only] until they no longer need the services provided by Gilead. There is no specific term by which an individual must leave [Valor Home]; the term is entirely dependent [on] the individual's treatment progress. Once the individuals are capable of living more independently through the services and supports [provided] by Gilead, they move out of [Valor Home].'' I agree with the majority's observation that ''[t]he defendant failed to produce any evidence to contradict or rebut the plaintiffs' evidence demonstrating that the housing provided by Valor Home is temporary.'' Part II of the majority opinion.

I emphasize that a more developed factual record might well have led to a different conclusion in this case. For example, the record does not contain any evidence

respect to the issue presently before the court.'' *State* v. *Ramos*, supra, 306 Conn. 148 (*Palmer, J.*, concurring). I agree with Justice Palmer that § 1-2z has the potential to limit this court's ability to ascertain legislative intent accurately, which presents an impediment that is ''troubling'' in light of a latent ambiguity as is present in this case. Id. (*Palmer, J.*, concurring). Thus, under the interpretation regime of § 1-2z, when an ambiguity arises in application, so too does a fact intensive inquiry for the court. This case is illustrative of this potentially difficult point. Instead of looking to the legislative history for further guidance as to the application of the word ''temporary'' in this context, it appears that we are bound to apply the seemingly plain meaning of the word temporary to the facts in the record. See id., 140–41.

Rainbow Housing Corp. *v.* Cromwell

regarding how long residents generally stay at Valor Home. It also does not contain any evidence concerning whether Valor Home's residents act in a manner consistent with living somewhere on a more than temporary basis, such as using its address to register to vote.[4] Cf. *Hicks* v. *Brophy*, 839 F. Supp. 948, 951 (D. Conn. 1993) ("[F]actors [to determine domicil] include the place where civil and political rights are exercised, taxes paid, real and personal property (such as automobiles) located, driver's and other licenses obtained, bank accounts maintained, and places of business or employment. . . . Other factors are also relevant, such as whether the person owns or rents his place of residence, how permanent the residence appears, and the location of a person's physician, lawyer, accountant, dentist, stockbroker . . . ." (Citations omitted.)); *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 546, 295 A.2d 519 (1972) ("[t]o constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home" (internal quotation marks omitted)).

Based on the limited factual record in this case, I conclude that Valor Home provides temporary housing to its clients within the meaning of the plain language of § 12-81 (7) (B). I, therefore, agree with the majority's conclusion that the trial court properly rendered summary judgment in favor of the plaintiffs.

Accordingly, I concur in the judgment of the court affirming the trial court's judgment.

---

[4] As the majority notes, the defendant could have sought such evidence pursuant to Practice Book § 17-47. See footnote 13 of the majority opinion.