******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FUELCELL ENERGY, INC. *v.* TOWN OF GROTON
## (SC 20804)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

### *Syllabus*

The defendant, the town of Groton, appealed from the judgment of the trial
court. The trial court had sustained the plaintiff's appeal from the defendant's
denial of the plaintiff's applications seeking municipal property tax exemp-
tions for certain of the plaintiff's fuel cell modules and related equipment.
On appeal, the defendant claimed, inter alia, that the trial court, in concluding
that the property at issue was exempt from taxation, had improperly con-
strued the statute (§ 12-81 (57)) exempting class I renewable energy sources
from municipal taxation and claimed that § 12-81 (63), which permits but
does not require municipalities to exempt congeneration systems from taxa-
tion, controlled. *Held*:

The plaintiff was entitled to a tax exemption under § 12-81 (57) for tax years
2017 through 2019, and, accordingly, this court upheld the trial court's
determination that the property at issue should have been exempted from
taxation under § 12-81 (57) rather than under § 12-81 (63) for those tax years.

The trial court correctly determined that, for the 2016 tax year, the property
at issue constituted goods in the process of manufacture and was therefore
exempt from taxation in that tax year under § 12-81 (50).

This court upheld the trial court's determination that the plaintiff was not
required to file with the defendant a declaration of the personal property
at issue, as such property was not subject to taxation, and the penalties
that the defendant levied for the plaintiff's failure to file that declaration
therefore were not permitted.

Argued February 7—officially released July 24, 2024*

### *Procedural History*

Appeal from the decision of the defendant's board
of assessment appeals concerning an assessment on
certain of the plaintiff's property, brought to the Supe-
rior Court in the judicial district of New London and
transferred to the judicial district of New Britain, where
Groton Fuel Cell 1, LLC, was added as a plaintiff; there-

---

* July 24, 2024, the date that this decision was released as a slip opinion,
is the operative date for all substantive and procedural purposes.

after, the court, *Klau, J.*, granted in part the plaintiffs' motion for summary judgment, denied the defendant's motion for partial summary judgment, and rendered judgment thereon; subsequently, the case was tried to the court, *Cordani, J.*; thereafter, the plaintiffs withdrew certain counts of the complaint, and the court, *Cordani, J.*, rendered judgment for the plaintiffs on the remaining counts, and the defendant appealed. *Affirmed.*

*Eric W. Callahan*, with whom were *Richard S. Cody* and, on the brief, *Timothy R. Bouchard*, for the appellant (defendant).

*Kari L. Olson*, with whom was *Joseph D. Szerejko*, for the appellees (plaintiffs).

*Opinion*

D'AURIA, J. This municipal tax appeal asks us to consider how, and whether, personal property tax exemptions should apply to fuel cell modules that produce both electricity and waste heat. It first asks whether fuel cell modules and related equipment were exempt from property taxation as a class I renewable energy source under General Statutes § 12-81 (57). It then asks whether that same property was exempted from taxation for the October 1, 2016 grand list as "goods in [the] process of manufacture" pursuant to § 12-81 (50). Last, it asks whether the taxpayers were required to formally declare their personal property pursuant to General Statutes §§ 12-40, 12-41 and 12-71, even if it was exempt from taxation, and what, if any, the consequences of failing to do so would be.

The record supports the following undisputed facts and procedural history. The plaintiff, FuelCell Energy, Inc., constructs, operates, and manufactures molten carbonate fuel cells throughout Connecticut. Fuel cells are sources of renewable energy that supply electricity to businesses and consumers. When fuel cells generate

chemical reactions to make electricity, they create waste heat. That heat can be released into the atmosphere or converted into thermal energy through a heat recovery steam generator (HRSG). The property that the defendant, the town of Groton, sought to tax is comprised of four fuel cell modules and related equipment (property). The property primarily provides electricity to the Pfizer campus. It also converts waste heat with an HRSG to heat Pfizer's buildings. The plaintiff began to install the property on Pfizer's campus in May, 2016. The property is owned by Groton Fuel Cell 1, LLC, a subsidiary of the plaintiff.[1]

In September, 2016, the plaintiff asked the Public Utilities Regulatory Authority (PURA) to classify the property as a class I renewable energy source. In December, 2016, PURA approved the plaintiff's application. Separate from the plaintiff's PURA application, the defendant had become aware of the property's installation by June, 2016.

In January, 2017, the defendant retroactively assessed the property as an 80 percent complete "construction in progress" (CIP) and valued the property at $8,192,800 as of October 1, 2016. The defendant added a 25 percent penalty to its assessment based on the plaintiff's failure to file a declaration for the property. Following the January, 2017 assessment, the plaintiff applied to the defendant for an exemption under § 12-81 (57), which exempts class I renewable sources from taxation. The defendant denied the application, stating that the property was more properly classified as a cogeneration system under § 12-81 (63), which allows, but does not require, municipalities to exempt cogeneration systems, as it produced both heat and electricity.

---

[1] The plaintiff filed a motion to cite in Groton Fuel Cell 1, LLC, as an additional plaintiff, which the trial court granted. For convenience, we refer to FuelCell Energy, Inc., as the plaintiff.

The plaintiff appealed from the exemption denial and retroactive assessment to the Superior Court pursuant to General Statutes §§ 12-117a and 12-119. From 2017 to 2019, the plaintiff continued to file additional applications for tax exemptions under § 12-81 (57). The defendant denied each subsequent exemption application and added 25 percent penalties for failure to declare the property.

Both parties moved for summary judgment. The trial court granted partial summary judgment to the plaintiff, concluding that the property was exempt from taxation for years 2017 through 2019 based on § 12-81 (57). The trial court determined that "the categorical exception under § 12-81 (57) for class I renewable energy sources applies to fuel cells with an HRSG," therefore encompassing the property. The trial court denied both the plaintiff and the defendant summary judgment on whether the property was taxable for the 2016 tax year because factual questions remained as to whether the property was completely manufactured by October 1, 2016, and, if it was not, whether the property was taxable as a CIP pursuant to General Statutes § 12-53a (a).

Two years later, the trial court resolved the remaining factual issues after a full trial, ultimately finding that the property was not completely manufactured by October 1, 2016, and, therefore, could not qualify for exemption under § 12-81 (57). It also held that the property was not taxable as a CIP because § 12-53a (a) applies to real, rather than personal, property. Further, because there was no similar statutory provision authorizing the defendant to tax personal property, the court determined that the property was exempt from taxation under § 12-81 (50) for the 2016 tax year as "goods in [the] process of manufacture . . . ." Finally, the trial court held that the defendant improperly penalized the plaintiff for failing to declare the property because the relevant statutory exemptions' plain text did not require

declarations. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The defendant first claims that the trial court incorrectly construed § 12-81 (57) to include the property as an exempt class I renewable energy source for years 2017 through 2021. It argues that § 12-81 (63) instead should control based on applying the rule of strict construction for tax exemptions to the statutes' plain text. The defendant bases its argument on General Statutes § 16-1 (20), which defines class I renewable energy sources as electricity from fuel cells but does not state whether a class I renewable energy source that produces something other than electricity—like heat—remains a class I renewable energy source. The defendant argues that interpreting § 12-81 (57) to include sources that produce more than just electricity violates the rule requiring us to apply the exemption strictly against the plaintiff. The defendant also contends that, if the legislature meant for § 12-81 (57) to apply to sources that produce electricity and heat, the statute would have included language to that effect. It further argues that, because the plaintiff concedes that a fuel cell with an HRSG is a cogeneration system, the plain text of § 12-81 (63) (a) makes the exemption of the property from taxation discretionary with the defendant.

In response, the plaintiff claims that § 12-81 (57) should control this dispute based on the principle that specific terms prevail over general terms when two statutes govern the same subject matter. The plaintiff contends that, because the property fits both § 12-81 (57) and (63) as an energy source that emits both electricity and heat, § 12-81 (57), the more specific statute,

should govern. The plaintiff further contends that classifying the property under § 12-81 (57) allows for a harmonious and consistent body of law, whereas the defendant's interpretation would render legislative intent to exempt fuel cell modules pointless.

The meaning of § 12-81 (57) and (63), and § 16-1 (20), as applied to the undisputed facts in this tax appeal, presents a "question of statutory construction, over which we exercise plenary review." *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 511, 264 A.3d 532 (2021). Statutory interpretation must "in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If . . . the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered." General Statutes § 1-2z; see also, e.g., *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 827–28, 251 A.3d 56 (2020). Our analysis fundamentally seeks "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, 340 Conn. 115, 126, 263 A.3d 87 (2021).

We adhere to the "principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling . . . in the absence of express contrary legislative intent"; (internal quotation marks omitted) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 302, 21 A.3d 759 (2011), quoting *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 760, 830 A.2d 711 (2003); and the "principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56

(2010). We are further guided by the rule of strict construction applicable to tax exemptions: "[P]rovisions granting a tax exemption are to be construed strictly against the party claiming the exception, who bears the burden of proving entitlement to it. . . . [S]uch strict construction neither requires nor permits the contravention of the true intent and purpose of the statute . . . ." (Internal quotation marks omitted.) *Rainbow Housing Corp.* v. *Cromwell*, supra, 340 Conn. 512. Finally, only if, after reading the statute's plain language in context, "we are left with more than one reasonable interpretation," do we turn to extratextual sources. *Wind Colebrook South, LLC* v. *Colebrook*, 344 Conn. 150, 165, 278 A.3d 442 (2022).

We must look first to the statutes' plain language and relationship to other statutes. In 1981, the General Assembly added § 12-81 (63) to the list of exemptions from local taxation. See Public Acts 1981, No. 81-439, § 13. It allows, but does not require, local governments to exempt from taxation for up to fifteen years a "[c]ogeneration system . . . which is designed, operated and installed as a system which produces . . . electricity and exhaust steam, waste steam, heat or other resultant thermal energy which is used for space or water heating or cooling, industrial, commercial, manufacturing, or other useful purposes . . . ." General Statutes § 12-81 (63) (b). In 1998, the General Assembly amended § 12-81 (57), which was originally passed in 1977, to include fuel cells to its exemption list. See Public Acts 1998, No. 98-28, § 1. Section 12-81 (57) (D) now exempts from taxation "any (i) Class I renewable energy source, as defined in section 16-1 . . . installed for generation or displacement of energy . . . ." In relevant part, § 16-1 (20) defines a class I renewable energy source to include "(A) electricity derived from . . . a fuel cell . . . ."

The parties agreed, and the trial court found, that the text of both § 12-81 (57) and (63) is plain and unambiguous. We agree that a plain reading of § 12-81 (57) and (63) reveals that § 12-81 (57) exempts fuel cells as class I renewable energy sources and that § 12-81 (63) allows, but does not require, municipalities to exempt cogeneration systems, which may include fuel cells, as well as nonrenewable energy sources.

The parties' disagreement centers on whether the property should be exempt from taxation. Each party takes a different position on what the statutes' unambiguous text means for this property since, as the trial court observed, the property "arguably falls within [the plain text of] both statutes . . . ." The parties both posit that principles of statutory interpretation bolster their respective claims: the defendant argues that the rule of strict construction for exemptions to taxation requires that we apply § 12-81 (63), and the plaintiff argues that both the principle that specific terms prevail over general terms governing the same subject matter and the principle of promoting a harmonious body of law require that we apply § 12-81 (57).

The trial court agreed with the plaintiff. Because the property could fit into either statute based on the plain meaning of the text, we look to principles of statutory interpretation for clarity.[2]

---

[2] Although we agree with the trial court's conclusion, because we resolve this question of interpretation based on unambiguous statutory text, the court should not have looked for support to extratextual evidence from the plaintiff's approved PURA application. *See Tappin* v. *Homecomings Financial Network, Inc.*, supra, 265 Conn. 754–55. A plain language reading of a statute properly includes applying canons of statutory interpretation, such as the rule of strict construction against those claiming tax exemptions, the principle that specific terms prevail over general terms covering the same subject matter, and the principle that the legislature is presumed to have created a harmonious body of law. See, e.g., *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 87, 282 A.3d 1253 (2022); *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, supra, 301 Conn. 302.

We recognize that, in *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811 n.25, 873 A.2d 965 (2005), the court noted that the canon of statutory

The principle that specific terms prevail over general language favors the plaintiff. Section 12-81 (57) exempts class I renewable energy sources from taxation, and § 16-1 (20) (A) (iii) expressly defines those sources to include fuel cells. Section 12-81 (63) permits municipalities to exempt cogeneration systems, which can include renewable (e.g., fuel cells) or nonrenewable (e.g., coal) energy sources, so long as those sources "[produce], in the same process, electricity and exhaust steam, waste steam, heat or other resultant thermal energy which is used for space or water heating or cooling, industrial, commercial, manufacturing or other useful purposes . . . ." General Statutes § 12-81 (63) (b). Because the plaintiff could claim an exemption for the property under either statute, we conclude that the property's taxability is governed by the more specific exemption. See, e.g., *Institute of Living* v. *Hartford*, 133 Conn. 258, 270–71, 50 A.2d 822 (1946) (hospital that could be deemed as exempt from taxation under two statutory

---

construction providing that a specific statute prevails over a general statute is a form of " 'extratextual evidence' " for purposes of a § 1-2z analysis that can be considered *only* when a statute is deemed ambiguous. We have since silently departed from that admonition and have applied this canon to determine which of two unambiguous statutes applies. See General Statutes § 1-2z (requiring that intent of legislature in first instance be derived from "the text of the statute itself and *its relationship to other statutes*" (emphasis added)); see also, e.g., *Redding* v. *Georgetown Land Development Co.*, *LLC*, 337 Conn. 75, 86 and 90 n.14, 251 A.3d 980 (2020) (specific reference to subject matter prevails over general reference to same subject matter when resolving tension between two unambiguous tax statutes); *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, supra, 301 Conn. 317 (*Eveleigh, J.*, dissenting) (relying on *Miller's Pond Co.*, *LLC*, to admonish majority for applying canon that specific statute prevails over general statute in determining which of two unambiguous tax statutes apply); *In re Jan Carlos D.*, 297 Conn. 16, 24–25, 997 A.2d 471 (2010) (applying canon that specific terms in statute prevail over general language in same or another statute in determining which of two criminal statutes applied to arrest of juveniles), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). Consistent with our recent case law, we clarify that this canon of statutory construction does not constitute extratextual evidence of legislative intent under § 1-2z.

provisions, one generally covering charitable organizations and another specifically covering hospitals with government financial support, properly was covered by more specific statute); see also *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 87, 282 A.3d 1253 (2022); *Wind Colebrook South, LLC* v. *Colebrook*, supra, 344 Conn. 165; *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, supra, 301 Conn. 302–303; *Griswold Airport, Inc.* v. *Madison*, 289 Conn. 723, 729–31 and n.10, 961 A.2d 338 (2008). Not only is § 12-81 (57) the more specific of the two statutes, but it is also later in time because the legislature amended it to include fuel cells after it had adopted § 12-81 (63), further bolstering our conclusion. See, e.g., *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 205–206, 355 A.2d 21 (1974) (because legislature is presumed to know all statutes and effects that its actions will have, later enacted provision governs as legislature's most recent articulation of its intent); see also *State* v. *Tyson*, 195 Conn. 326, 331, 487 A.2d 1091 (1985) (when conflict between statutes exists, latest provision governs).

The principle that courts should promote a consistent and harmonious body of law also favors the plaintiff. The defendant acknowledges that, if the plaintiff were to let the excess heat from the property escape into the atmosphere, rather than capture and convert it to usable heat, § 12-81 (57) would apply. But it maintains that, because the property uses the excess heat created from the fuel cells and § 16-1 (20) (iii) does not include the term "heat," § 12-81 (63) should govern, giving the defendant and other municipalities the discretion to deny the exemption or to grant it for up to fifteen years. This interpretation would be inconsistent and not in harmony with legislative intent to exempt renewable energy sources, and fuel cells in particular, interposing a disincentive to fuel cell companies to maximize renewable energy production by allowing resultant waste heat to

dissipate rather than productively using it, which flies in the face of the legislature's policy goal in enacting the statute.[3]

The rule of strict construction for tax exemptions does not change the calculus. Although the defendant is correct that tax exemptions should be construed strictly against the party claiming the exception, the rule of strict construction requires that we "embrace only what is strictly within their terms." (Internal quotation marks omitted.) *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 707, 966 A.2d 188 (2009). Here, there is no question that, even when § 12-81 (57) and (63) are strictly construed, the property qualifies for an exemption under both statutes. The question is which statute, between the two, should most appropriately apply to the property. That inquiry goes beyond what we might glean from the rule of strict construction because, as the parties and trial court agreed, both statutes cover the property.

The plaintiff has met its burden of proving its entitlement to a tax exemption under § 12-81 (57). As the trial court determined, the plaintiff has demonstrated that the defendant's strict construction of § 12-81 (57) would undercut the legislative intent to encourage renewable energy projects by incentivizing a company's emission of waste heat into the atmosphere, rather than recycling it, so that companies can benefit from § 12-81 (57). Put another way, the defendant's interpretation would

---

[3] There is an unavoidable tension between the plain meaning rule's mandate to primarily look to the statutory text and its relationship to other statutes, and the plain meaning rule's goal of ascertaining the "apparent intent of the legislature." (Internal quotation marks omitted.) *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, supra, 340 Conn. 126. That tension requires courts to look to legislative intent but not stray too far to support their conclusions. Id. Here, we stay within the confines of "apparent" legislative intent in holding that the property belongs in the purview of § 12-81 (57), as our analysis derives from the relationship between § 12-81 (57) and (63).

contravene "the true intent and purpose of the statute
. . . ." (Internal quotation marks omitted.) *Rainbow
Housing Corp.* v. *Cromwell*, supra, 340 Conn. 512.

Because both statutes are unambiguous, from a plain
text analysis, we are not required to look to extratextual
sources to ascertain their meaning. Cf. *Wind Colebrook
South, LLC* v. *Colebrook*, supra, 344 Conn. 165 (wind
turbines reasonably could be interpreted as being sub-
ject to taxation under multiple statutory subsections,
based on principle of statutory construction that, when
descriptive statute includes catchall phrase, courts
should assume that statute includes only items consis-
tent with those already listed). We therefore uphold the
trial court's holding that the property should be exempt
from taxation under § 12-81 (57) rather than § 12-81
(63).

## II

The defendant next claims that the trial court incor-
rectly concluded that the property was exempt for the
2016 tax year based on § 12-81 (50), which exempts
manufacturers' inventories, including "goods in [the]
process of manufacture . . . ." The defendant argues
that, despite its own earlier classification of the prop-
erty as CIP in January, 2017, the property was opera-
tional as of October 1, 2016, and therefore was not "in
[the] process of manufacture" pursuant to § 12-81 (50).[4]

---

[4] We do not address the defendant's secondary claim that the property
would not qualify for an exemption for 2016 under § 12-81 (50) because it
was not "goods" as a matter of law, a claim the defendant failed to distinctly
raise before the trial court. See, e.g., *White* v. *Mazda Motor of America,
Inc.*, 313 Conn. 610, 631, 99 A.3d 1079 (2014). The defendant argued at trial
that § 12-81 (50) did not apply to the property because it was not in the
process of manufacture phase as of October 1, 2016. To advance this claim,
the defendant relied on extensive testimony by its expert, Edlund. At no
point did the defendant argue that, in addition to the property no longer
being "in [the] process of manufacture," the property was not "goods" as
a matter of law. Accordingly, neither Judge Klau, who ruled on the parties'
pretrial summary judgment motions, nor Judge Cordani addressed the issue.
It was only in its appellate brief that the defendant raised the argument that
the property was not "goods." There is no indication in the defendant's

To support their respective positions, the parties each presented expert testimony. The experts' disagreement as to when the property became operational (and therefore was no longer "in [the] process of manufacture" phase) centered on the factual question of whether the property's conditioning process—essentially performance testing—was necessary for operation. Whether the trial court correctly determined that the property was exempt from taxation for the 2016 tax year under § 12-81 (50) was based on the court's factual inquiry. We address questions of fact using the clearly erroneous standard of review, under which a factual finding is clearly erroneous when "there is no evidence to support [the finding] . . . or when although there is evidence in the record to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *St. Joseph's Living Center, Inc.* v. *Windham,* supra, 290 Conn. 707.

The plaintiff called Prabhakar Singh in support of its argument that the property should be properly classified as "goods in [the] process of manufacture" under § 12-81 (50) for tax year 2016. Singh testified that the

posttrial brief, or other records such as transcripts and pretrial management reports, that this claim had been raised. Rather, the defendant focused on expert opinion that pertained to whether the property was "in [the] process of manufacture . . . ."

The defendant *did* claim that the plaintiff's reliance on § 12-81 (50) was inappropriate because the plaintiff had failed to plead to that effect, therefore failing to provide the defendant with notice. But, here, there is no question that the defendant had notice that the plaintiff intended to argue that the property fit into § 12-81 (50) in tax year 2016. The defendant presented its own expert witness at trial who addressed that very question. The trial court agreed, concluding that the plaintiff had sufficiently pleaded its assertion of § 12-81 (50) and that the defendant was "adequately forewarned that this would be an issue at trial." Because the defendant failed to argue at trial that the property was legally a "good" and the trial court concluded that the defendant had sufficient notice of the plaintiff's argument based on § 12-81 (50), we decline to address that issue. See, e.g., *Jobe* v. *Commissioner of Correction,* 334 Conn. 636, 643, 224 A.3d 147 (2020).

property was operational only after October 12, 2016, based on several ongoing steps in the conditioning process completed after October 1, 2016, including those ensuring "nameplate capacity, efficiency, interconnection, grid interconnectivity and chemistry, gas chemistry . . . ." He emphasized that, until the conditioning process was complete, the property was not operational because "the uniformity of temperature is critical for the satisfactory and required operation of the cell. If there is a large imbalance in the temperature, the cell will fail."

The defendant presented the testimony of David Edlund, who opined that the property was assembled and operational by October 1, 2016, because it had produced energy in September, 2016, that Pfizer then purchased. Edlund also cited the plaintiff's own expert testimony that "the system had to be operational in order to enter into commissioning . . . ." Edlund stated that it was immaterial that the conditioning process turned up mechanical errors that the plaintiff had to fix, and did fix. In Edlund's view, that process still took place *after* the property became operational.

The trial court agreed with the plaintiff's expert, finding that the property's conditioning process was critical to the property's overall manufacture, and, because the conditioning process was not completed by October 8, 2016, "the manufacture of the property was not complete until October 8, 2016."

Based on the trial record, we cannot conclude that the trial court's finding that the property was properly exempted from taxation in 2016 as "goods in [the] process of manufacture" pursuant to § 12-81 (50) was clearly erroneous. The record provides ample evidence to support the trial court's conclusion. Over the course of two days, the trial court heard testimony from the plaintiff's financial officer and vice president of engi-

neering, and the defendant's tax assessor, along with the parties' experts, Edlund and Singh. These witnesses testified at length about when they believed the property was completely manufactured and what facts formed the basis for their respective opinions. The defendant's expert testimony does not leave this court with "the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *St. Joseph's Living Center, Inc.* v. *Windham*, supra, 290 Conn. 707. Therefore, we uphold the trial court's determination that the property was exempt from taxation in 2016 based on § 12-81 (50).

III

Last, the defendant claims that the trial court incorrectly determined that the plaintiff was not required to file a personal property declaration of the property pursuant to §§ 12-40, 12-41 and 12-71. The defendant argues that the plaintiff waived its right to exemption from taxation under § 12-81 (57) by failing to file a personal property declaration. The defendant contends that its assessor was correct to deny the plaintiff's § 12-81 (57) exemption applications and to levy penalties. The defendant argues that §§ 12-40, 12-41 and 12-71 require taxpayers to declare personal property that is exempt from taxation because the failure to do so undercuts a municipality's ability to balance its budget.

The plaintiff responds that only taxable property must be declared, and, because the property is exempt from taxation, §§ 12-40, 12-41 and 12-71 do not mandate a declaration of the property. The plaintiff argues that, if the defendant were correct, all exempt property listed in § 12-81 would require a yearly declaration, including such commonplace items as musical instruments and jewelry. It further argues that, because § 12-81 includes multiple exemptions where the legislature has explicitly mandated that taxpayers file personal property declara-

tions, the lack of express language for taxpayers to do so under § 12-81 (57) indicates that there is no requirement to file a declaration. Finally, the plaintiff argues that its application for an exemption under § 12-81 (57) acts, functionally, as a declaration because it notifies the defendant of the property, therefore allowing localities to correct errors (such as a company's incorrectly claiming an exemption) and to retroactively collect overdue taxes with appropriate penalties.

We exercise plenary review in seeking to determine the meaning of §§ 12-40, 12-41 and 12-71. See *Rainbow Housing Corp.* v. *Cromwell*, supra, 340 Conn. 511. As stated in part I of this opinion, our statutory construction is guided by the plain meaning rule in § 1-2z.

We start with § 12-40. In relevant part, § 12-40 provides that "assessors in each town . . . shall . . . publish . . . a notice requiring all persons therein liable to pay taxes to bring in a declaration of the taxable personal property belonging to them . . . ." Next, § 12-41 (c) lists the types of "tangible personal property" that should be included in a taxpayer's annual declaration. Section 12-71 (a) (1) provides in relevant part that personal property subject to tax, including "goods, chattels and effects . . . shall be listed for purposes of property tax . . . ."

The trial court had earlier rejected this claim when considering both parties' motions for summary judgment, ruling that the plaintiff was not required to declare the property based on the lack of express instruction in § 12-81 (57) and the inapplicability of §§ 12-40 and 12-41. After a trial on the remaining issues, the trial court addressed the issue again, concluding that both the assessment and the penalty were improper because "[p]ersonal property declarations are only due for taxable personal property."

We agree with the trial court. A plain reading of §§ 12-40, 12-41 and 12-71 reveals that none of them applies to the property. First, § 12-40 has nothing to do with taxpayers' obligations to declare exempt personal property; rather, it requires local municipalities to provide notice to taxpayers about the need to declare taxable personal property. Second, § 12-41 includes no directive for taxpayers to make annual declarations; it details only the types of personal property that belong in such declarations. Last, § 12-71 involves personal property subject to taxation, not personal property subject to exemption from taxation.

The case law that the defendant relies on to advance its claim is unpersuasive. It is true that taxation partially is a self-regulating system and notice of taxable assets is important information for a municipality's budgetary consideration. But the cases cited by the defendant cannot fairly be understood as suggesting that declarations are required for property exempt from taxation. See *Cornwall* v. *Todd*, 38 Conn. 443, 447 (1871) (taxes are "just as essential and important as government itself"); see also *Paul Dinto Electrical Contractors, Inc.* v. *Waterbury*, 266 Conn. 706, 721, 835 A.2d 33 (2003) ("the personal property tax system is . . . a self-reporting system . . . suggest[ing] a legislative intent to create simple and direct mechanisms for self-reporting" (citation omitted)); *Xerox Corp.* v. *Board of Tax Review*, 240 Conn. 192, 205, 690 A.2d 389 (1997) (emphasizing that taxpayer bears burden of supplying information that provides "the facts upon which valuations may be based" (emphasis omitted; internal quotation marks omitted)); *Curly Construction Co.* v. *Darien*, 147 Conn. 308, 310–11, 160 A.2d 751 (1960) (taxpayer failed to sustain burden of proving nontaxability); *Hartford* v. *Pallotti*, 88 Conn. 73, 76–77, 89 A. 1119 (1914) (assessors had right to take property because there was

no "notice, actual or constructive, that condemnation proceedings had been commenced").

We are therefore left with the statute's plain language. Section 12-81 (57) does not require, based on its plain text, a personal property declaration of exempt personal property. As a practical matter, although we recognize why the defendant would like to receive notice of exempt property of value, there is no question in the present case that it had adequate notice. The defendant knew about the property by June, 2016—several months before the deadline for exemption applications and personal property declarations.

Based on the foregoing, we uphold the trial court's conclusion that the plaintiff was not required to declare the property because it was exempt from taxation under § 12-81 (57) and, by extension, that the penalties levied by the defendant under § 12-81 (50) were not permitted.

The judgment is affirmed.

In this opinion the other justices concurred.